Salem District Court
No. 2002-710

THE STATE OF NEW HAMPSHIRE

v.

CHRISTOPHER BOULAIS

Argued: September 10, 2003
Opinion Issued: November 7, 2003

*Peter W. Heed*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Woods Law Office, P.A.*, of Exeter (*Stephen J.C. Woods* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Christopher Boulais, appeals his conviction in Salem District Court (*Jones*, J.) on six counts of disorderly conduct. *See* RSA 644:2, II(b) (1996). On appeal, Boulais argues that the trial court misconstrued RSA 644:2, II(b) and that the evidence was insufficient to support his convictions. We reverse.

The record supports the following facts. In 2001, while employed at Sunsational Tanning Salon in Salem, Boulais made numerous remarks to female customers and employees which were the basis for six disorderly conduct charges.

The first two charges involved a woman who worked at the salon. Shortly after she was hired, Boulais told the employee that he wanted to "unzipper [her] pants and eat [her] for breakfast." On the same day, while the employee was standing on a ladder, Boulais leaned toward her waist area and stated: "Perfect height for my breakfast." Boulais made these comments when he was alone with the employee. She testified that Boulais' remarks made her uncomfortable, shocked and fearful.

The third and fourth charges involved a customer of the salon. When the customer was alone with Boulais in the salon, he told her that he could give her "some good protein." She found this remark disgusting. Boulais also told the customer that he wanted her to "stand over his head." The customer testified that immediately after this encounter, she cried and was upset.

The fifth charge stemmed from an incident involving another employee of the salon. This woman testified that while she was working at the salon, Boulais told her: "Go have sex with your boyfriend, and if he can't make you happy . . . then come see me." Like the other women, she testified that Boulais' remark was made outside of the presence of others. She further testified that it made her uncomfortable, mad, upset and scared.

The sixth charge involved a customer of the salon. She testified that when she saw Boulais at a restaurant near the salon and asked him what he was "up to," Boulais responded that he was "[s]ix three, 220 pounds, 10 ½ inches, fully extended." There were several other customers and workers in the restaurant when Boulais made this remark. The customer testified that she was humiliated and embarrassed by Boulais' comment and that she wanted to punch him in the face but she chose not to because she is "a little bit too much of a lady."

We first address Boulais' argument that the trial court misconstrued RSA 644:2, II(b). Because we hold that the trial court misinterpreted the statute and that Boulais did not violate it, we need not address his remaining arguments.

When construing a statute, we first examine its language, ascribing the plain and ordinary meaning to the words used by the legislature. *Franklin Lodge of Elks v. Marcoux*, 149 N.H. 581, 585 (2003). We do not consider words and phrases in isolation, however, but within the context of the statute as a whole. *Id.* This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. *Id.* Indeed, it is especially appropriate to consider the evil or mischief the statute was designed to remedy. *Id.* Because the interpretation of a statute is a question of law, we review the trial court's decision *de novo. Pennelli v. Town of Pelham*, 148 N.H. 365, 366 (2002).

Boulais was charged under RSA 644:2, II(b), which provides: "A person is guilty of disorderly conduct if ... [h]e [d]irects at another person in a public place obscene, derisive, or offensive words which are likely to provoke a violent reaction on the part of an ordinary person ...." The statute thus makes it unlawful to utter "offensive words which are likely to provoke a violent reaction." RSA 644:2, II(b). There is no dispute that Boulais' remarks were offensive. Thus, we must determine whether the trial court correctly construed the element of "likely to provoke a violent reaction."

■ ■ We begin with an analysis of the plain and ordinary meaning of "violent." "Violent" is defined as "characterized by extreme force" and "marked by abnormally sudden physical activity and intensity." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2554 (unabridged ed. 1961). By using the word "violent," the legislature intended to criminalize those offensive words which are likely to provoke extreme force or abnormally sudden physical activity. The trial judge found that the violent reaction element of the statute could be satisfied if the listener experienced feelings of outrage, discomfort, and humiliation. This broad reading of "violent reaction" is inconsistent with the plain and ordinary meaning of the words used by the legislature. We disagree with the trial court's ruling that remarks that cause only an internal emotional response in the listener could meet the violent reaction element and be the basis for a disorderly conduct charge.

Our conclusion is supported by our prior construction of this provision. We have stated that the purpose of the disorderly conduct statute is to

preserve the public peace. *See State v. Chaplinsky*, 91 N.H. 310, 312 (1941), *aff'd sub nom. Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942). Thus, "[d]erisive and annoying words can be taken as coming within the purview of the statute . . . only when they have this characteristic of plainly tending to excite the addressee to a breach of the peace." *Id.* at 320-21.

The legislative history of RSA 644:2 is also consistent with this interpretation. The disorderly conduct statute, adopted as part of the Criminal Code of 1971, was recommended to the legislature in the REPORT OF COMMISSION TO RECOMMEND CODIFICATION OF CRIMINAL LAWS. In commenting on the disorderly conduct statute, the Commission referred to the Model Penal Code. *See* COMMISSION TO RECOMMEND CODIFICATION OF CRIMINAL LAWS, REPORT OF COMMISSION TO RECOMMEND CODIFICATION OF CRIMINAL LAWS 100 (1969). As we did in *State v. Murray*, 135 N.H. 369 (1991), we use the Model Penal Code commentaries as guidance in construing RSA 644:2, II(b).

The comments to the Model Penal Code's disorderly conduct provision state that it is not intended as "blanket authority for ridding the streets of undesirables. Instead, [the provision] reflects an effort to limit disorderly conduct to specifically designated acts likely to create a public nuisance." MODEL PENAL CODE AND COMMENTARIES § 250.2 comment *2*, at 328 (1980). "To punish language merely because it is 'offensive' plainly goes too far, as it covers speech that is objectionable only because it is unpopular." *Id.* § 250.2 comment *4(b)* at 333. The commentaries further suggest that

> even the most vigorous abuse would not be covered if it were uttered in circumstances that did not bring home to the actor the risk of public disturbance . . . . On the other hand, any language that qualifies as "abusive" would be punished if the context involved a substantial and unjustifiable risk of violent reaction . . . .

*Id.* § 250.2 comment *4(b)* at 337.

In interpreting RSA 644:2, II(b), the trial court ruled that Boulais could be found guilty if, in response to his remarks, the listener had a violent emotional reaction which could include trembling, outrage and humiliation. We do not agree that an internal emotional response alone is sufficient to satisfy the "violent reaction" element of the statute. Because the disorderly conduct statute is intended to preserve the public peace, it does not provide the State with blanket authority to prosecute citizens for offensive remarks that cause personal embarrassment or outrage in others. *See id.* § 250.2, comment *4(b)* at 333. Rather, RSA 644:2, II(b)

authorizes the State to prosecute citizens for offensive remarks only if those remarks create a substantial and unjustifiable risk of violent reaction on the part of an ordinary person. *See id.* § 250.2 comment *4(b)* at 337; *accord Chemalali v. District of Columbia,* 655 A.2d 1226, 1229 (D.C. App.) (reiterating prior holding that "words and actions likely to produce violence on the part of others are included within the purview of breach of the peace"), *cert. denied,* 516 U.S. 818 (1995); *Matter of Welfare of S. L. J.,* 263 N.W.2d 412, 419 (Minn. 1978) (holding unconstitutional a provision of the disorderly conduct statute because it punished "words that merely tend to arouse alarm, anger, or resentment in others rather than only words which by their very utterance inflict injury or tend to incite an immediate breach of the peace" (quotation omitted)); *Commonwealth v. Hock,* 728 A.2d 943, 946 (Pa. 1999) ("The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." (quotation omitted)).

Applying this interpretation of the statute to the case at hand, we conclude that the evidence is insufficient to support Boulais' convictions. "To prevail on a challenge to the sufficiency of the evidence, [Boulais] must demonstrate that no rational trier of fact, evaluating all of the evidence and its reasonable inferences in the light most favorable to the State, could conclude beyond a reasonable doubt that he had committed the charged crime." *State v. Parmenter,* 149 N.H. 40, 43 (2002).

■ Here, the women testified that Boulais' direct invitations for sexual activity made them feel upset, uncomfortable, humiliated, embarrassed and outraged. These reactions are insufficient to satisfy the violent reaction element of the statute. Simply put, the women experienced internal feelings which were unlikely to result in an outward response that would cause a public disturbance. Moreover, Boulais' direct invitations for sexual activity were made outside of the presence of others and, therefore, were unlikely to create a breach of the peace. While, as noted above, one woman testified that she contemplated punching Boulais in the face after she heard his remark, the statement itself, unlike the other statements, was not a direct solicitation for sexual activity. Thus, the aggrandizing, crude self-description made to that woman would not be likely to provoke a violent reaction on the part of an ordinary person. Despite their offensive nature, we cannot find that, under these circumstances, Boulais' comments created a substantial and unjustifiable risk of a violent reaction on the part of an ordinary person.

Because we hold that the trial court misinterpreted the statute and that the evidence was insufficient to support the convictions, we reverse.

*Reversed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.