Newport District Court
No. 2005-111

THE STATE OF NEW HAMPSHIRE

v.

SHAWN KELLEY

Argued: February 8, 2006
Opinion Issued: May 16, 2006

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Theodore Lothstein*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

BRODERICK, C.J. The State appeals a ruling of the Newport District Court (*Cardello*, J.) dismissing a complaint of resisting arrest or detention filed against the defendant, Shawn Kelley. We reverse and remand.

The record supports the following. While attending a wedding reception, Kelley became intoxicated. The bartender at the reception called the Newport police to report Kelley's behavior. Three officers arrived at the reception, concluded that Kelley was intoxicated, and tried to take him into protective custody. *See* RSA ch. 172-B (2002 & Supp. 2005). As they did so, Kelley pulled away and started to run. The officers grabbed him and told him to put his hands behind his back, but he refused and "continued to tighten up." The officers finally managed to take him into custody and place him in the police cruiser, during which time Kelley shouted for help.

Kelley was charged with one count of resisting arrest or detention and one count of disorderly conduct. *See* RSA 642:2 (1996); RSA 644:2 (Supp. 2005). He moved to dismiss the charge of resisting arrest or detention, arguing that "protective custody" under RSA chapter 172-B is a civil status and, therefore, does not qualify as "arrest or detention" for purposes of RSA 642:2, a criminal statute. He further argued that the policy behind allowing officers to take intoxicated individuals into protective custody was to decriminalize alcoholism and alcohol abuse. Kelley contended that the legislature defined those conditions as health and social problems rather than criminal transgressions against the welfare and morals of the public. Laws 1979, 378:1. Over the State's objection, the trial court dismissed the charge of resisting arrest or detention because "RSA 172-B:3 protective custody is not an arrest or detention under RSA 642:2." This appeal followed.

In addressing whether the trial court erred in granting Kelley's motion to dismiss, we must decide whether RSA 642:2 applies exclusively to arrests and detentions in the criminal context, and, if not, whether it encompasses protective custody under RSA 172-B:3. We have previously stated that, in the criminal context, RSA 642:2 applies to "other forms of seizures of the person falling short of a full-blown arrest." *State v. Fleury*, 116 N.H. 577, 578, 579 (1976); *see also State v. Hutton*, 108 N.H. 279, 285-87 (1967). We address each question in turn.

As the trial court engaged in statutory interpretation, which is a question of law, we review its ruling *de novo*. *See State v. Boulais*, 150 N.H. 216, 218 (2003). When construing a statute, we first examine its language, ascribing the plain and ordinary meaning to the words used by the legislature. *Id.* We consider words and phrases within the context of the statute as a whole, and in light of the policy or purpose advanced by the statutory scheme. *Id.*

Kelley argues that RSA 642:2 should be limited to the criminal context because "the legislature intended [it] to encompass arrests, and quasi-criminal detentions falling short of arrest such as a *Terry* stop." *See Terry v. Ohio*, 392 U.S. 1 (1968). He contends that defining "detention" in this manner gives it a "technical or otherwise peculiar meaning," *State v. Berry*, 121 N.H. 324, 327 (1981), thus rendering RSA 642:2 ambiguous and allowing us to look beyond the plain meaning to divine legislative intent. We disagree. Because we determine that the terms are unambiguous, a plain meaning analysis is sufficient to resolve this case.

The crime of resisting arrest or detention is committed when a "person knowingly or purposely physically interferes with a person recognized to be a law enforcement official, including a probation or parole officer, seeking to effect an arrest or detention of the person or another." RSA 642:2. "Detain" means "to hold or keep in or as if in custody," "to keep back," and to "stop [or] delay." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 616 (unabridged ed. 1961). Nothing in these definitions suggests that "detain" must be applied in a criminal context to the exclusion of other applications. Indeed, the word only takes on the technical or otherwise peculiar meaning suggested by Kelley if one ignores the plain meaning and arbitrarily assigns it solely to the criminal context.

Our plain meaning analysis is further supported by the statute's purpose. By enacting this section, the legislature articulated a policy that individuals are to follow the commands of law enforcement officials, because doing so fosters the effective administration of justice, discourages self-help, and provides for the safety of officers. *See State v. Beauchesne*, 151 N.H. 803, 818 (2005). We have further recognized:

> A society which seemingly becomes more complex with each passing day is enlightened when its laws reflect a high purpose to have apparent differences between those who wield the authority of government, and those who do not, resolved in the courts or by some other orderly process, rather than by physical confrontation on the street or in the gutter.

*State v. Haas*, 134 N.H. 480, 484 (1991). We need not define the precise scope of the "detentions" to which RSA 642:2 may apply. It is sufficient for this case to hold that RSA 642:2 does not apply solely to detentions in the criminal context.

Having determined that this section is not limited to "criminal" detentions, we must now determine whether "detention," as used in RSA 642:2, includes the protective custody authorized by RSA 172-B:3. "Detention" is not defined in the Criminal Code, but derivatives of it are

used elsewhere in the statutes. One example is in RSA chapter 172-B regarding alcoholism and alcohol abuse. That chapter allows peace officers to take into protective custody an individual whose "mental or physical functioning . . . is substantially impaired as a result of the presence of alcohol in his system." RSA 172-B:1, X; RSA 172-B:3. The term "protective custody" is defined as "a civil status in which an incapacitated person is *detained* by a peace officer." RSA 172-B:1, XIII (emphasis added).

As RSA 172-B:1, XIII was enacted after RSA 642:2 had been in effect for many years, its use of "detained" indicates that the legislature intended that it be included within the scope of the earlier statute. We presume that the legislature knew the meaning of the words it chose, and that it used those words advisedly. *Starr v. Governor*, 151 N.H. 608, 610 (2004). Where it chose to use the word "detained" in RSA 172-B:1, XIII, and neither amended RSA 642:2 to apply only to criminal cases, nor explicitly exempted RSA 172-B:3 protective custody from the ambit of RSA 642:2, we conclude that its intent was to equate resisting protective custody with resisting detention.

We recognize that, in the preamble to RSA chapter 172-B, the legislature articulated the policy behind the protective custody statute:

> It is the policy of the state of New Hampshire that alcoholism and alcohol abuse are correctly perceived as health and social problems rather than criminal transgressions against the welfare and morals of the public. The general court therefore declares that:
>
> I. Alcoholics and alcohol abusers shall no longer be subjected to criminal prosecution solely because of their consumption of alcoholic beverages or other behavior related to consumption which is not directly injurious to the welfare or property of the public.
>
> II. Alcoholics and alcohol abusers shall be treated as sick and socially disabled persons and shall be provided adequate and appropriate medical and other humane rehabilitative services congruent with their needs.

Laws 1979, 378:1. However, intoxication is not an excuse or justification for any criminal act, although it may negate an element of an offense. *See* RSA 626:4 (1996); RSA 172-B:4; *State v. Hamel*, 123 N.H. 670, 678 (1983) ("It was the province of the jury to determine whether intoxication negated deliberation and premeditation."). Accordingly, we hold that an individual may be convicted for resisting arrest or detention under RSA 642:2 where

the individual knowingly or purposely physically interferes with his being taken into protective custody under RSA 172-B:3.

We recognize that it is the police officer's unhappy lot to deal on many occasions with the most unruly members of our population. *State v. Murray*, 135 N.H. 369, 372 (1992). While these often include those who are intoxicated and require public assistance, we will not excuse or condone conduct that may place the general public or officers in harm's way. *Cf. State v. Lopez*, 139 N.H. 309, 311-13 (1994) (examining public safety exception to exclusionary rule).

However, we urge prosecutors to exercise their discretion in determining whom to charge with resisting arrest and detention. The policies set forth by the legislature in the preamble to RSA chapter 172-B should be considered in making these decisions, and our trial courts are encouraged to consider them as well when sentencing such offenders.

Accordingly, we reverse the trial court's order to the extent that it ruled that RSA 172-B:3 protective custody is not an arrest or detention under RSA 642:2, and remand for further proceedings consistent with this decision.

*Reversed and remanded.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.