Merrimack
No. 2008-347

THE STATE OF NEW HAMPSHIRE

v.

BERNARD LINDSEY

Argued: March 17, 2009
Opinion Issued: May 15, 2009

*Kelly A. Ayotte*, attorney general (*Thomas E. Bocian*, assistant attorney general, on the brief and orally), for the State.

*David Betancourt*, public defender, of Dover, on the brief and orally, for the defendant.

BRODERICK, C.J. The defendant, Bernard Lindsey, appeals his conviction for resisting arrest, *see* RSA 642:2 (Supp. 2008), arguing that the Superior Court (*Mangones*, J.) erred in denying his motion to dismiss the charge at the close of the State's case. He contends that the evidence was insufficient to support his conviction because once the police detained him by handcuffing and forcing him to lie on the floor, his subsequent conduct was not culpable under the resisting arrest statute. We affirm.

The jury could have found the following facts. On the evening of February 25, 2007, two Concord police officers and one Boscawen police officer investigated a 911 hang-up call in Concord. When they arrived, the officers heard yelling and the sound of breaking glass from inside an apartment. The officers, who were in full uniform, entered the apartment and saw the defendant sitting on a couch holding a kitchen knife with a seven-inch blade. A coffee table was overturned and broken glass strewn about. The defendant was yelling and pointing the knife in the direction of another room. Two officers drew their guns and ordered the defendant to drop the knife. He ignored their commands and continued pointing the knife toward the other room. At gunpoint, the officers repeated the command numerous times, and the defendant finally stood up and dropped the knife. The police ordered the defendant to get down on the floor, but he failed to comply and continued yelling. Grabbing his shoulders, an officer forced him to the floor and handcuffed him to secure control of the scene. While the police handcuffed another individual and found two others in the

apartment, they momentarily left the defendant face down on the apartment floor. All of the individuals were handcuffed and placed on the floor.

As the officers were assessing the situation, the defendant tried to get up, swinging around, yelling and screaming and pushing himself onto the couch. One officer tried to calm him down, but the defendant was pushing and pulling away and "bull-rushing" toward him. Another officer approached to help, but the defendant "yelled, screamed and kicked." The two officers brought the defendant to the floor and allowed him to sit upright, where he finally calmed down. The defendant was later charged with resisting arrest. At trial, the defendant claimed that he tried to get off the floor because he was having difficulty breathing. He moved to dismiss the charge, arguing that the State presented insufficient evidence to support a conviction for resisting arrest. The trial court denied the motion. The jury returned a guilty verdict, and this appeal followed.

The resisting arrest statute provides:

> A person is guilty of a misdemeanor when the person knowingly or purposely physically interferes with a person recognized to be a law enforcement official, including a probation or parole officer, *seeking to effect an arrest or detention* of the person or another regardless of whether there is a legal basis for the arrest. A person is guilty of a class B felony if the act of resisting arrest or detention causes serious bodily injury, as defined in RSA 625:11, VI, to another person. Verbal protestations alone shall not constitute resisting arrest or detention.

RSA 642:2 (emphasis added). The defendant argues that the trial court erred in denying his motion to dismiss for lack of sufficient evidence. According to the defendant, once he was handcuffed and forced to lie face down on the floor, his detention was complete, and thus his subsequent conduct could not have occurred while the police were seeking to effect his detention within the meaning of the statute.

> To prevail on his challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt.

*State v. Evans*, 150 N.H. 416, 424 (2003) (citations omitted). The defendant's challenge focuses upon the meaning of the phrase "seeking to effect an arrest or detention" in RSA 642:2 and therefore presents an issue of statutory interpretation. "In matters of statutory interpretation, we are the

final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Duquette v. Warden, N.H. State Prison*, 154 N.H. 737, 740 (2007). With respect to the Criminal Code, we construe its provisions "according to the fair import of their terms and to promote justice." RSA 625:3 (2007). We look to the plain language of the statute at issue, *Duquette*, 154 N.H. at 740, and "consider words and phrases within the context of the statute as a whole, and in light of the policy or purpose advanced by the statutory scheme," *State v. Kelley*, 153 N.H. 481, 482 (2006).

■ A conviction for resisting arrest must rest upon conduct that occurs while law enforcement is "seeking to effect an arrest or detention." RSA 642:2. The plain meaning of "effect" includes: "to cause to come into being"; "to bring about esp. through successful use of factors contributory to the result"; "ACCOMPLISH, EXECUTE." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 724 (unabridged ed. 2002). An "arrest" is defined by statute to mean "the taking of a person into custody in order that he may be forthcoming to answer for the commission of a crime." RSA 594:1 (2001); *see also State v. Murray*, 106 N.H. 71, 73 (1964). We have previously noted that the term "detain" means "to hold or keep in or as if in custody," "to keep back," and to "stop or delay." *Kelley*, 153 N.H. at 483.

Law enforcement officers may confront a myriad of scenarios when seeking to effect an arrest or detention, including volatile situations that can change in an instant, especially when they are exerting physical control over an individual. The resisting arrest statute reflects the policy that individuals "follow the commands of law enforcement officials, because doing so fosters the effective administration of justice, discourages self-help, and provides for the safety of officers." *Id.*

> A society which seemingly becomes more complex with each passing day is enlightened when its laws reflect a high purpose to have apparent differences between those who wield the authority of government, and those who do not, resolved in the courts or by some other orderly process, rather than by physical confrontation on the street or in the gutter.

*Id.* (quotation omitted); *see also* RSA 594:5 (2001) (citizens have a duty to peaceably submit to arrest and refrain from using force or any weapon in resisting it, regardless of whether any legal basis exists for the arrest).

■ We construe the phrase "seeking to effect an arrest or detention" as including the entire course of events during which law enforcement officers seek to secure and maintain physical control of an individual, attendant to accomplishing the intended law enforcement duty. *See Shambor v. State*,

No. 223, 2002 WL 31235416, at *1 (Del. Super. Oct. 4, 2002) (prohibition against resisting arrest applies to entire process or course of events in which law enforcement is securing individual); *Com. v. Green*, No. 02-P-678, 2003 WL 22399532, at *2 (Mass. App. Ct. Oct. 21, 2003) (same); *State v. Ondo*, 231 S.W.3d 314, 316 (Mo. Ct. App. 2007) (same); *State v. Pierce*, 203 P.3d 290, 293-94 (Or. Ct. App. 2009) (same); *Latham v. State*, 128 S.W.3d 325, 329-30 (Tex. Ct. App. 2004) (same). Whether a defendant's resistive conduct occurred while law enforcement was "seeking to effect an arrest or detention" must be assessed on a case-by-case basis, objectively viewing the continuum of events as a whole. *See In the Matter of M.H.*, No. 03-02-00672-CV, 2003 WL 21354758, at *3 (Tex. Ct. App. June 12, 2003) (arrest is to be determined by examining the totality of the circumstances on a case-by-case basis).

██ ██ Under the defendant's construction of the statute, all resistance which occurs after the moment in which an individual comes under the control of law enforcement officers is no longer culpable under the resisting arrest statute. This construction neither accords with the fair import of the statute nor promotes justice. *See* RSA 625:3. We agree with those jurisdictions that hold that effecting an arrest or detention is not necessarily an instantaneous event and should not be assessed by parsing out discrete, snapshot moments in time. *See, e.g., State v. Bolden*, 801 P.2d 863, 864 (Or. Ct. App. 1990), *review denied*, 806 P.2d 1153 (Or. 1991); *Green*, No. 02-P-678, 2003 WL 22399532, at *2. We also reject the defendant's reliance upon the meaning of "seizure" within the constitutional context to aid in the interpretation of key terms in the resisting arrest statute. While concepts involving the restraint upon a person's liberty, such as arrest, detention and seizure may overlap in various legal contexts, the legislature's intended meaning of the phrase "seeking to effect an arrest or detention" within the context of the resisting arrest statute controls. *See Com. v. Katykhin*, 794 N.E.2d 1291, 1292 (Mass. App. Ct. 2003), *review denied*, 798 N.E.2d 286 (Mass. 2003) (seizure in constitutional sense does not equate to an effected arrest under resisting arrest statute).

In this case, we need not define precise beginning and end points that encompass the process of "seeking to effect an arrest or detention." Rather, we limit our review of the defendant's insufficiency argument to determining whether a rational jury could have concluded that the process of seeking to effect the defendant's detention was still in progress at the time he began struggling with the officers to get off the floor, even though he had been handcuffed and momentarily left to lie face down on the apartment floor.

■ From the moment the police entered the apartment, they faced a continuing, volatile encounter with the defendant. He was yelling and pointing a seven-inch bladed knife. He refused numerous commands at gun point to drop the knife. He failed to comply with orders to go to the floor and ultimately was forced to do so and handcuffed. He was briefly left face down on the floor so that the officers could continue to secure the area by detaining the other individuals at the scene. Suddenly, he resumed his yelling, attempted to get off the floor where he had been instructed to stay, and was kicking, pushing and "bull-rushing" at a police officer. Finally, once forced to return to the floor and allowed to sit up, he calmed down completely. Viewing the evidence and all reasonable inferences in the light most favorable to the State, we conclude that a reasonable juror could have concluded that the brief time period in which the defendant was face down on the floor while handcuffed did not serve to conclude the process of seeking to effect his detention. *See, e.g., Katykhin*, 794 N.E.2d at 1292 (handcuffing does not automatically conclude the continuing course of conduct in which police were effecting arrest); *Ondo*, 231 S.W.3d at 316 (struggle that ensued after defendant was peaceably handcuffed supported conviction for resisting arrest). Accordingly, viewing the continuum of events as a whole, we conclude that the evidence is sufficient to support his conviction.

*Affirmed.*

DALIANIS, DUGGAN and HICKS, JJ., concurred.