W. Brent Powell, Judge, dissenting.
I respectfully dissent. "When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." State v. Belton , 153 S.W.3d 307, 309 (Mo. banc 2005). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." Id. "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." State v. Miller , 372 S.W.3d 455, 463 (Mo. banc 2012). "When reviewing the sufficiency of the evidence supporting a criminal conviction, the Court does not act as a 'super juror' with veto powers" but "gives great deference to the trier of fact." Id.
The principal opinion properly states the defendant must: (1) have knowledge the law enforcement officer is making an arrest; (2) act with the purpose of preventing the officer from effecting the arrest; and (3) resist the arrest using or threatening violence or physical force or by fleeing from the officer.
*52 Section 575.150.1, RSMo (2016). The issue in this case is when an arrest is complete or "effected" for the purposes of resisting arrest. The principal opinion holds no rational fact-finder could have found the arrest was ongoing at the time of Ajak's resistance because he was restrained in the kitchen and his arrest was complete when he was escorted to the patrol car. This holding fails to account for the continuous and ongoing nature of an arrest and is contrary to this Court's standard of review.
"This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." State v. Johnson , 524 S.W.3d 505, 510 (Mo. banc 2017) (internal quotations omitted); see also § 1.090, RSMo (2016). ("Words and phrases shall be taken in their plain or ordinary and usual sense"). The plain meaning of "effect" means "to bring about." Webster's Third New International Dictionary 724 (2002). The term "effecting the arrest" in § 575.150, therefore means bringing about an arrest. See § 575.150.1 (providing the offense is committed when "a law enforcement officer is making an arrest") (emphasis added). Effecting or bringing about an arrest is not an instantaneous act; it is a process continuing through a series of overlapping steps such as stopping and controlling the person's movements, handcuffing the person, searching for weapons and contraband, and placing the person in a police car for transport to a place of confinement.[1] When the arrest process is interrupted by the use of physical force, a defendant has resisted arrest.
Several states have also concluded an arrest is a process. The Supreme Court of New Hampshire interpreted the New Hampshire resisting arrest statute in State v. Lindsey , 158 N.H. 703, 973 A.2d 314, 316-18 (2009). The Lindsey court held an officer "seek[s] to effect an arrest or detention" throughout "the entire course of events during which law enforcement officers seek to secure and maintain physical control of an individual, attendant to accomplishing the intended law enforcement duty." Id. at 317. In analyzing the legislature's intent in regard to the statute, the Lindsey court stated the resisting arrest statute "reflects the policy that individuals follow the commands of law enforcement officials, because doing so fosters the effective administration of justice, discourages self-help, and provides for the safety of officers." Id. (Internal quotations omitted).
Similarly, the Arizona court of appeals analyzed the state's resisting arrest statute in State v. Mitchell , 204 Ariz. 216, 62 P.3d 616, 618-20 (Ariz. Ct. App. 2003). In Mitchell , the defendant argued his arrest was complete when he had been handcuffed, and, therefore, he could not be convicted of resisting arrest. Id. at 618. The court considered the plain meaning of the statute to interpret the legislature's intent and the meaning of "effecting an arrest," turning to Black's Law Dictionary *53 and Webster's Dictionary. Id. The court stated:
Based on the language of A.R.S. § 13-2508 and the common meaning of the verb "effect," we construe the term "effecting" in § 13-2508 to mean an on-going [sic] process toward achieving, producing, making, or bringing about, an arrest. See Lewis v. State , 30 S.W.3d 510, 512 (Tex. App. 2000) ("effecting an arrest" entails a process or transaction and the conduct alleged to be resisting arrest must occur after the arrest process begins but before the process ends); see also State v. Bay , 130 Ohio App.3d 772, 721 N.E.2d 421, 422 (1998) (resisting arrest charge arose from incident 15 to 30 minutes after police handcuffed defendant.) Until the arrest has been "effected," the arrest process remains ongoing and the resisting arrest statute is applicable.
Id.
The Mitchell court considered the legislature's intent and determined the "purpose of the resisting arrest statute is to protect peace officers and citizens from substantial risk of physical injury." Id. at 619. The court held, if an arrest ends the moment a defendant is handcuffed, the protection provided by the resisting arrest statute would be limited, contrary to the legislature's intent. Id. The court held a reasonable jury could find the police officers were still effecting Mitchell's arrest when he began struggling against the officers. Id.
In Perdue v. Commonwealth , 411 S.W.3d 786, 790-93 (Ky. Ct. App. 2013), the Kentucky court of appeals adopted the reasoning of the New Hampshire and Arizona courts in determining that "effecting an arrest is a process that does not necessarily end when a defendant has been handcuffed." (Internal quotations omitted). In Perdue , the defendant moved for a directed verdict, arguing he could not be guilty of resisting arrest because he had already been arrested when he spit on a police officer, headbutted the officer, and tried to kick the doors when the officer was trying to place him in the back of a police car while he was handcuffed. Id. at 789-90. The Perdue court determined reasonable jurors could have found the defendant's violent acts were an attempt to prevent the officer from effecting his arrest and upheld the trial court's denial of the defendant's motion for a directed verdict on the resisting arrest charge. Id. at 793.
A bright-line test for determining when an arrest has been effected is impractical because encounters between police and individuals suspected of criminal activity vary significantly. Accordingly, I agree with the principal opinion that whether an arrest has been effected "depends on the specific circumstances of each case" and "[e]ach case requires a fact-specific inquiry to determine at what point the arrest is complete." It is the duty of the jury to look at the facts of each case and determine whether an arrest was effected.
In this case, Ajak was yelling and screaming while being placed in handcuffs and while being advised he was under arrest. He refused the officer's request to put on additional clothing and shoes before transport. While walking to the police cruiser, Ajak was "pulling and jerking and just trying to get away[,] trying to break [the officers'] grip," knocking off the officer's name badge in the process. Once at the vehicle, Ajak continued to yell and scream and even spit on the officer. A reasonable juror could infer the arrest was still ongoing, i.e., the officers were still effecting the arrest at the time of Ajak's resistance. Although a reasonable juror could also infer, as the principal opinion does, that the officers effected the arrest in the kitchen, this Court must ignore all *54 inferences contrary to the verdict. Belton , 153 S.W.3d at 309.
Because there was evidence upon which a rational jury could have found Ajak's arrest was not complete when he became violent with the police officers, I would affirm the judgement.

The principal opinion does not rely on the plain meaning of "effecting the arrest" to recognize an arrest as a process. Rather, the principal opinion cites cases interpreting the term "arrest" as used in 4th Amendment analysis and in other statutes unrelated to resisting arrest, and ultimately relies on the definition of "arrest" set out in § 544.180. But § 544.180 is not part of the criminal code, and as this Court has recognized, the term "arrest" as used in criminal cases is subject to more than one definition depending upon the statute and facts of a particular case. MAI-CR 333.00 Definition-Specific. Neither the criminal code nor § 575.150 define "arrest." This Court instructs, "In the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary." State v. Oliver , 293 S.W.3d 437, 446 (Mo. banc 2009). The plain meaning of "arrest" is "the taking or detaining of a person in custody by authority of law." Webster's Third New International Dictionary 121 (2002).