NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Milford District Division
Case No. 2022-0025
Citation: State v. Rogers, 2024 N.H. 57

THE STATE OF NEW HAMPSHIRE

v.

ROY ROGERS

Argued: May 14, 2024
Opinion Issued: October 11, 2024

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

COUNTWAY, J.

[¶1] The defendant, Roy Rogers, appeals his convictions, following a trial in Circuit Court (Derby, J.), on one count of driving under the influence, see RSA 265-A:2, I(a) (2024), and five counts of resisting arrest, see RSA 642:2 (2016). The defendant does not appeal his conviction for driving after

suspension of his license, see RSA 263:64 (2024). We affirm in part, vacate in part, and remand.

[¶2] The trial court found, or could have found on the evidence presented, the following facts. At approximately 4:15 on the morning of September 12, 2020, Brookline Police Officer Torrisi encountered a vehicle stopped in the roadway on Oak Hill Road. As Torrisi approached in his cruiser, the vehicle moved toward him and flashed its high beams. Thinking that the driver was trying to get his attention, and perhaps needed help, Torrisi initiated a motor vehicle stop.

[¶3] Torrisi made contact with the defendant, who was operating the vehicle. Torrisi noticed an odor of alcohol and observed that the defendant's eyes were glassy and bloodshot, and his speech was slurred. Torrisi checked the status of the defendant's license and discovered it had been suspended. At some point during the encounter, Hollis Police Officer Connors arrived to assist, and the remainder of the stop was recorded on Connors' body camera. A friend of the defendant also arrived in another car during the stop.

[¶4] Torrisi administered field sobriety tests and determined, based on the defendant's performance, that he was impaired due to alcohol. Torrisi attempted to arrest the defendant, but the defendant pulled away. A lengthy encounter ensued, during which, the trial court found, the "defendant was so uncooperative that application of non-lethal physical force to complete the arrest would have been justified at two points during the encounter, but the police opted for de-escalation and prolonged dialogue." The court's written order notes that the "defendant's friend was parked at the scene with minor children in the car" and that "statements by the police officers suggested that the children . . . would have seen the application of force had [the police] done it." While trying to persuade the defendant to cooperate, the officers made various statements to him about going to the police station and agreeing to take a breathalyzer test. They further told him that "[i]f [the breathalyzer result was] under .08, you're free to go."

[¶5] After approximately 15 to 20 minutes, the officers handcuffed the defendant and, after more resistance by the defendant, persuaded him to get into Torrisi's cruiser. The defendant was taken to the Brookline police station where Torrisi read him the administrative license suspension form. The defendant again engaged the officers in a lengthy back-and-forth discourse before signing the form and agreeing to take the breathalyzer test. At times, they discussed what would happen if the breathalyzer result was under the legal limit. The defendant was again told, "If you're under [.08], you're out of here." The test was finally administered, after a preliminary observation period, approximately two hours after the initial stop. The result was .07. The defendant was given a hand summons for operating after suspension and allowed to leave.

[¶6] On October 6, 2020, additional charges were filed against the defendant for driving while under the influence, negligent driving, see RSA 265:79-b (2024), and five counts of resisting arrest. The defendant moved to dismiss all charges, arguing that "Officers Torrisi and Connors offered not to prosecute Defendant for the offenses if he agreed to perform the breathalyzer test at the station and the result was under a [.08]." The State objected. The court denied the motion, explaining in its written order issued after trial:

> Neither party has presented any controlling or persuasive legal authority for the proposition that a defendant and police officers can enter into an enforceable verbal immunity or non-prosecution agreement during the booking process. Even if verbal agreements at the point of booking were enforceable, there was no meeting of the minds about what the casual phrases "free to go" or "you're good" meant with respect to the various legal issues at play . . . . Beyond that, the testimony and bodycam footage showed that the defendant was argumentative and uncooperative during the arrest and booking process. . . . This prolonged the encounter much longer than necessary and provided valuable time for the defendant's body to metabolize the alcohol in his system. Enforcement of any kind of verbal immunity or non-prosecution agreement under the circumstances the court observed in this case would be against public policy and virtually every principle of contract law.

[¶7] The defendant was found not guilty of negligent driving and guilty of the remaining charges. This appeal followed.

## I.     Agreement to Forgo Prosecution

[¶8] The defendant first argues that the trial court erred in denying his motion to enforce an agreement not to prosecute him for any offense other than driving after suspension. He contends that all of the elements of contract formation are present here: the police made an offer when they promised to forgo prosecution if the defendant "took a breathalyzer test and the result was below .08"; the defendant "accepted the offer by taking the breathalyzer"; and both the officers' promise to forgo prosecution and the defendant's performance by taking the breathalyzer constituted consideration. He asserts that because the breathalyzer result was under .08, the State was bound by its promise not to prosecute the additional charges.

[¶9] In response, the State argues that two independent grounds support the trial court's denial of the defendant's motion. First, the State contends that "Torrisi, acting in his capacity as a police officer, did not have the authority to bind the State to a non-prosecution agreement with the defendant." Second, the State argues that "[t]he evidence does not support the conclusion that the

3

officers objectively expressed an intent to be bound by the terms of a non-prosecution agreement contingent on the results of a breathalyzer test" and, therefore, there was no "meeting of the minds." Because we agree with the State's second contention, we need not address the first.

[¶10] "A valid, enforceable contract requires offer, acceptance, consideration, and a meeting of the minds." Durgin v. Pillsbury Lake Water Dist., 153 N.H. 818, 821 (2006). "For a meeting of the minds to occur, the parties must assent to the same contractual terms. That is, the parties must have the same understanding of the terms of the contract and must manifest an intention, supported by adequate consideration, to be bound by the contract." Id. (quotation, citation, and brackets omitted). "The question of whether a meeting of the minds has occurred is analyzed under an objective standard and is a question of fact." Chase Home for Children v. N.H. Div. for Children, Youth & Families, 162 N.H. 720, 727 (2011). We will sustain the trial court's finding that there was not a meeting of the minds unless it is lacking in evidentiary support or tainted by an error of law. See id.

[¶11] The sole issue thus is "whether from an objective viewpoint the parties assented to the same [terms]." Id. at 728. Having reviewed the entire record before us, we conclude that the trial court correctly determined that they did not. Consequently, there was no meeting of the minds and no enforceable agreement.

II.     Double Jeopardy

[¶12] The defendant next argues that the trial court erred in entering more than one conviction and imposing more than one sentence for resisting arrest. He observes that the double jeopardy provisions of both the New Hampshire and United States Constitutions provide protection against, among other things, multiple punishments for the same offense. See State v. Woodbury, 172 N.H. 358, 368 (2019); N.H. CONST. pt. I, art. 16; U.S. CONST. amends. V, XIV. He contends that here, there was "a single crime of resisting arrest" and notes that "[b]ecause the five resisting-arrest charges . . . alleged 'more than one violation of a single statutory provision,' this case presents a 'unit of prosecution' issue." (Quoting Woodbury, 172 N.H. at 368.) By focusing his challenge on a unit of prosecution analysis, the defendant invokes the inquiry that we have used in addressing double jeopardy challenges under the Federal Constitution. Accordingly, we confine our review to analysis of the unit of prosecution intended by the legislature. See State v. Wilson, 169 N.H. 755, 773 (2017).

[¶13] The exercise of determining the unit of prosecution intended by the legislature is one of statutory construction. Id. at 773. Our standard of review is de novo. Id. at 772. We review the plain language of the resisting arrest statute to discern the legislature's intent. State v. Lynch, 169 N.H. 689, 708

(2017).  That statute provides, in relevant part:

> A person is guilty of a misdemeanor when the person knowingly or purposely physically interferes with a person recognized to be a law enforcement official, including a probation or parole officer, seeking to effect an arrest or detention of the person or another regardless of whether there is a legal basis for the arrest.

RSA 642:2.  Thus, to be convicted of resisting arrest, the defendant must have: (1) knowingly or purposely; (2) physically interfered; (3) with a person recognized to be a law enforcement official; (4) while that person was seeking to effect an arrest or detention of the defendant.  RSA 642:2; State v. Lindsey, 158 N.H. 703, 706 (2009).

[¶14] The defendant contends that "[b]ecause the gravamen of the resisting-arrest statute is the arrest, the arrest is the unit of prosecution."  He then asserts that we "affirmed this construction of the resisting-arrest statute in Lindsey."  We disagree.  In Lindsey, the defendant appealed his conviction for resisting arrest, arguing that "the evidence was insufficient to support his conviction because once the police detained him by handcuffing and forcing him to lie on the floor, his subsequent conduct was not culpable under the resisting arrest statute."  Lindsey, 158 N.H. at 704.  In assessing the defendant's sufficiency challenge, we "agree[d] with those jurisdictions that hold that effecting an arrest or detention is not necessarily an instantaneous event and should not be assessed by parsing out discrete, snapshot moments in time."  Id. at 707.

[¶15] Contrary to the defendant's contention, however, we did not state that "the conduct prohibited by the statute . . . 'include[es] the entire course of events during which law enforcement officers seek to secure and maintain physical control of an individual.'"  (Quoting id. at 706.)  Rather, we construed the statutory "phrase 'seeking to effect an arrest or detention' as including the entire course of events during which law enforcement officers seek to secure and maintain physical control of an individual, attendant to accomplishing the intended law enforcement duty."  Id. at 706.  Thus, Lindsey addressed what we identified above as the fourth element of the offense — the requirement that the prohibited conduct occur while law enforcement is "seeking to effect an arrest or detention," RSA 642:2 — and did not determine what conduct the statute prohibits.

[¶16] The defendant cites decisions from other jurisdictions for the proposition that the unit of prosecution for resisting arrest is "the arrest itself." Mills v. State, 201 A.3d 1163, 1165 (Del. 2019).  As the State points out, each of the cases the defendant cites addressed the situation of multiple charges based on the number of officers resisted.  See id.; Wallace v. State, 724 So. 2d 1176, 1181 (Fla. 1998); State v. Parsons, 636 A.2d 1077, 1082 (N.J. Super. Ct.

5

App. Div. 1994). That is not the situation at issue here, as all charges alleged resistance against Torrisi.

[¶17] The State, on the other hand, relies upon People v. Lowe, 486 P.3d 397 (Col. App. 2020), to argue that the unit of prosecution is neither "the number of victim-officers resisted," nor "the number of arrests resisted," but, rather, "the number of discrete volitional acts of resisting arrest." Lowe, 486 P.3d at 408. We find Lowe's articulation of the unit of prosecution persuasive[1] and, based upon the plain language of our statute and our case law interpreting it, we conclude that the unit of prosecution under RSA 642:2 is "the number of discrete volitional acts of resisting arrest." Id.

[¶18] "Resisting arrest requires knowing or purposeful physical interference with a person recognized as a law enforcement officer who is seeking to make an arrest or detention." State v. Smith, 144 N.H. 1, 7 (1999). The prohibited conduct is physical interference. See RSA 642:2. We recognized as much in Smith when we noted that "[t]he gravamen of the offense charged was that the defendant fled when [an officer] attempted to arrest him" and that "[t]he obvious essential culpable act of resisting arrest, as charged . . . occurred when the defendant fled from [the officer]." Smith, 144 N.H. at 7, 8 (quotation and citation omitted).

[¶19] Smith was not a double jeopardy case, but, rather, involved a claim that the trial court erred in failing to give a unanimity instruction because, on the evidence, "some of the jurors may have believe that he resisted arrest" in different ways. Id. at 7 (quotation and brackets omitted). We concluded that "there was no genuine possibility of juror confusion as to the charged essential culpable act and the court's general instruction was adequate to ensure a unanimous verdict." Id. at 9. We further noted:

> Even if the jury could have broken down the defendant's course of conduct into multiple incidents of resisting arrest, but cf. State v. Giwosky, 326 N.W.2d 232, 237-38 (Wis. 1982) (continuous course of assaultive conduct over short period constitutes single offense), the acts the defendant has parsed out to demonstrate juror confusion are dissimilar to the essential culpable act and would have been perceived by a conscientious juror as part of the course of events surrounding its commission.

Id. at 8-9. Thus, while Smith supports interpreting RSA 642:2 to define

---

[1] Notwithstanding differences in the statutes at issue here and in Lowe, we consider the operative statutory language to be similar enough to find Lowe persuasive. See Lowe, 486 P.3d at 408 (noting the statute provided, in relevant part, that "a person commits resisting arrest when he knowingly 'attempts to prevent a peace officer, acting under color of his official authority, from effecting an arrest'").

the unit of prosecution as each discrete volitional act of physical interference, it also cautions that physical interference consisting of one continuous course of conduct over a short period constitutes a single offense. See id.; see also Lowe, 486 P.3d at 411 n.9 (concluding that the defendant's actions, which "occurred over a brief period of time, in a single location, with no intervening event," could "support only one resisting arrest conviction because his actions constituted a continuous act of resistance rather than factually distinct, volitional acts of resistance").

[¶20] The criminal complaints here charged that the defendant resisted arrest by committing the following acts: (1) "physically interfering by pulling away when told to place his hands behind his back by Officer Torrisi"; (2) "pulling away when told to place his hands behind his back by Officer Torrisi, a physical interference"; (3) "tensing up and refusing to place his hands behind his back after being ordered to by Officer Torrisi, a physical interference"; (4) "physically interfer[ing] by refusing to get in the cruiser when told to get in the cruiser by Officer Torrisi"; and (5) "physically interfer[ing] by refusing to sit in the cruiser when ordered to do so by Officer Torrisi." The State argues that the convictions on all five charges should be affirmed because the "evidence adduced at trial showed that the defendant physically interfered with Torrisi's attempt to arrest him five separate times." Alternatively, the State contends that if we view "the defendant's actions as a continuous course of conduct," the evidence showed at least two courses of resistant conduct — resisting being placed in handcuffs and resisting being put in the cruiser. The State argues that because these courses of conduct were separated by a period of compliant conduct, they support affirming at least two convictions for resisting arrest.

[¶21] Having reviewed the record, we conclude that the defendant committed a volitional act of physical interference with Torrisi's attempt to handcuff him when he engaged in a continuous course of conduct resisting that attempt. Similarly, we conclude that the defendant committed a volitional act of physical interference with Torrisi's attempt to place him in the cruiser when he engaged in a continuous course of conduct resisting that attempt. These courses of conduct are distinct, separated by a period of relative compliance. After being handcuffed, the defendant allowed Torrisi to pat him down and remove items from his pockets. He then began physically resisting Torrisi's efforts to lead him to the cruiser. Given that separation in time, we conclude that each episode of resistance — resisting being handcuffed and resisting entering the cruiser — constituted a discrete volitional act of resisting arrest. Each course of conduct constitutes one offense, and the evidence supports one conviction for resisting arrest by physically interfering with being handcuffed and one conviction for resisting arrest by physically interfering with being placed in the cruiser.

7

[¶22] Accordingly, we affirm the defendant's conviction for driving under the influence, one of his convictions for resisting being handcuffed, and one of his convictions for resisting being placed in the cruiser.  We vacate two of his convictions for resisting being handcuffed and one of his convictions for resisting being placed in the cruiser, and remand.

<u>Affirmed in part; vacated in part; and remanded</u>.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred.