Hillsborough-northern judicial district
No. 2011-819

KENNETH BOND & a.

v.

PAUL MARTINEAU & a.

Argued: June 13, 2012
Opinion Issued: September 28, 2012

*New Hampshire Legal Assistance*, of Manchester and Concord (*Elliott Berry* and *Dan Feltes* on the brief, and *Mr. Feltes* orally), for the plaintiffs.

*City Solicitor's Office*, of Manchester (*Peter R. Chiesa* on the brief and orally), for defendant City of Manchester.

DALIANIS, C.J. The plaintiffs, Kenneth Bond and Deborah Thibault, on behalf of themselves and a class of others similarly situated, appeal an order of the Superior Court (*Brown*, J.) granting summary judgment to the defendants, the City of Manchester and Paul Martineau in his official capacity as Commissioner of the Manchester Welfare Department (collectively, the City). We reverse and remand.

*I. Background*

The following facts are derived from the record. In January 2010, the plaintiffs applied for general assistance from the City pursuant to RSA chapter 165. *See* RSA 165:1, I (2002). On February 24, 2010, the City approved $140.00 per week in rental assistance. On March 18, 2010, the City suspended this assistance for seven days because of the plaintiffs' failure to provide certain documentation, including that related to $30 the plaintiffs used to buy gas for a vehicle. *See* RSA 165:1-b (2002). The City

lifted this suspension on March 25, 2010, noting, however, that the plaintiffs were "unable to show compliance with the $30 purchase of vehicle gas that [they] stated [they] had previously purchased through an alternate financial resource."

On April 1, 2010, the plaintiffs received rental assistance for one week. The plaintiffs again received one week of rental assistance on April 8, 2010. The April 8, 2010 notice of decision stated:

> Today you have not asked for vehicle gas, just as you did not ask for vehicle gas last week. In a March 15, email to this worker your attorney clearly stated what he believed to be legitimate reasons for gasoline assistance. On March 25th we assisted with five gallons of car gas. Since that date we have not seen the vehicle and have not been able to look at mileage or the amount of gas in the car. Today you state you did not drive your car here. You have stated that it broke down three or four days ago.

On April 9, 2010, the City revoked the April 8 voucher and denied the plaintiffs all assistance for six months because they had misrepresented information related to their vehicle. The April 9, 2010 notice of decision asserted that even though the plaintiffs told the City that their vehicle had broken down, a City security officer saw them exit their vehicle when they arrived for their April 8, 2010 appointment and had seen the vehicle at prior appointments. The April 9 notice of decision further averred that by concealing the vehicle, the plaintiffs "prevented [the City] from being able to check [the] fuel gauge [and] . . . odometer which would inform [the City] if [the plaintiffs] had other financial resources to put gas in [the] vehicle ([for] which [the plaintiffs] would then have had to provide receipts)." In the decision it was observed that the plaintiffs stated on their March 25, April 1, and April 8 financial information update sheets that they had not received "any income/money/resources since [their] prior appointment." *See* RSA 165:1-b, I(a). The April 9 decision referenced Section XII, subsection C(2) of the City's General Assistance Guidelines, which states: "Misrepresentation/omission of information by a client is grounds for denial or termination of all City assistance for up to six (6) months and may result in prosecution."

The plaintiffs petitioned the superior court to enjoin the City from suspending their assistance for six months. They brought the action on their own behalf and as representatives of a class consisting of "all persons who are currently or will in the future be disqualified from [the City's] general assistance program for six (6) months . . . on the grounds of misrepresentation of information to the [City] Welfare Department." *See* SUPER. CT. R. 27-A.

The court certified the class, and the parties filed cross-motions for summary judgment. The plaintiffs argued that RSA 165:1-b preempted the Guidelines. The trial court disagreed and granted summary judgment in favor of the City. This appeal followed.

## II. Analysis

We review *de novo* the trial court's application of the law to the facts in its summary judgment ruling. *Brown v. Concord Group Ins. Co.*, 163 N.H. 522, 524-25 (2012). We consider all of the evidence presented in the record, and all inferences properly drawn therefrom, in the light most favorable to the non-moving party. *Id.* If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment. *Id.* A fact is material if it affects the outcome of the litigation under the applicable substantive law. *Id.*

At the outset, we observe that although the City suspended the plaintiffs' benefits pursuant to Section XII(C)(2) of the guidelines, the plaintiffs sought to enjoin the City from enforcing Section VIII of the guidelines. Section VIII states: "Misrepresentation of information by a client is grounds for denial of all City assistance for up to six (6) months. Misrepresentation of information by a client may result in prosecution." Because Section XII(C)(2) and Section VIII are nearly identical, we treat the plaintiffs' arguments as having been made under both sections and, for ease of reference, refer to them as "the Guidelines."

We first turn to the plaintiffs' argument that RSA 165:1-b preempts the Guidelines. Preemption may be express or implied. *N. Country Envtl. Servs. v. Town of Bethlehem*, 150 N.H. 606, 611 (2004). Express preemption is not claimed here. *See id.* Implied preemption may be found when the comprehensiveness and detail of the State statutory scheme "preempts the field," which means that it evinces legislative intent to supersede local regulation. *See id.* State law also impliedly preempts local law when there is an actual conflict between State and local regulation. *See id.* A conflict exists when a municipal ordinance or regulation permits that which a State statute prohibits or vice versa. *Id.* Even when a local ordinance does not expressly conflict with a State statute, it will be impliedly preempted when it frustrates the statute's purpose. *See id.*

Preemption, then, is essentially a matter of statutory interpretation and construction. *Blagbrough Family Realty Trust v. Town of Wilton*, 153 N.H. 234, 236 (2006). Statutory interpretation is a question of law that we review *de novo*. *ATV Watch v. N.H. Dep't of Transp.*, 161 N.H. 746, 752 (2011). We are the final arbiter of the intent of the legislature as expressed in the

words of a statute considered as a whole. *Appeal of Union Tel. Co.*, 160 N.H. 309, 317 (2010). In interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* Unless we find that the statutory language is ambiguous, we need not look to legislative intent. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.*

The plaintiffs argue that RSA 165:1-b preempts the Guidelines because the statute and the Guidelines conflict. The Guidelines allow the City to deny benefits to a person for a period of up to six months because of omission or misrepresentation of information. In this case, the benefits of the plaintiffs were suspended for six months because they allegedly omitted or misrepresented information related to their financial resources. By contrast, although RSA 165:1-b allows a municipality to suspend benefits for the failure to disclose financial information, it does not authorize a blanket six-month suspension. *See* RSA 165:1-b, I, V.

RSA 165:1-b, "Disqualification for Noncompliance With Guidelines," provides, in pertinent part:

> I. Any person otherwise eligible for assistance under this chapter shall become ineligible to receive such assistance if he willfully fails to comply with written guidelines adopted by the governing body of the town or city relating to:
>
>     (a) Disclosure of income, resources, or other material financial data;
>
>     . . .
>
> II. No person shall be found ineligible for assistance or suspended from assistance pursuant to paragraph I until he has been given:
>
>     (a) A written notice stating those specific actions he must take in order to comply; and
>
>     (b) A 7-day period within which to comply after receiving such notice.
>
> III. If a person does not comply within the 7 days, the town or city may issue to the person a written notice that the person is ineligible for assistance or suspended from assistance. The written notice shall include a list of the guidelines with which the person is not in compliance, those actions necessary for compliance, and written notice of the opportunity to request a hearing within 5 days.

. . .

V. The period of ineligibility or suspension pursuant to this section shall be 7 days; provided, however, that any such suspension within 6 months after the end of any prior suspension period shall be for 14 days; and provided further that if upon the expiration of the 7-day or 14-day disqualification period the person continues to fail to carry out the specific actions set forth in the notice required in paragraph III, the disqualification shall continue until the person complies.

VI. The overseers of public welfare shall not be required to accept an application for general assistance from a person who is subject to disqualification or suspension under this section; provided, however, that in the event such disqualification or suspension continues beyond the 7 or 14-day period due to continued non-compliance . . ., and there is a dispute over a contention by such person that he has satisfactorily complied with the requirements set forth in the notice required by paragraph III, such person shall be given an opportunity to request a hearing to determine that issue . . . .

Thus, under RSA 165:1-b, I, a person otherwise eligible for General Assistance becomes ineligible to receive such assistance for willfully failing to comply with certain municipal guidelines, including those related to "disclosure of income, resources, or other material financial data." RSA 165:1-b, I(a). The initial suspension period is for seven days. If the suspension occurs "within 6 months after the end of [a] prior suspension period," however, then the suspension period is for fourteen days. RSA 165:1-b, V. "The period of ineligibility or suspension" may be longer, "if upon the expiration of the 7-day or 14-day disqualification period[,] [the person] continues to fail to carry out the specific actions" required of him or her. *Id.* In that case, the period "shall continue until the person complies." *Id.*

Here, the plaintiffs were deemed ineligible for further receipt of benefits because they allegedly misrepresented or omitted information about their financial resources related to their vehicle. Because their April 9 suspension occurred within six months of their March 18 suspension, RSA 165:1-b allowed the City to suspend them from receiving further assistance for fourteen days. If the plaintiffs failed to comply after fourteen days, RSA 165:1-b allowed the City to suspend them until they did comply. Under no circumstances, however, did RSA 165:1-b allow the City to impose a blanket six-month suspension. The plaintiffs argue, therefore, that the Guidelines,

as applied to them and others similarly situated, conflict with, and are impliedly preempted by, RSA 165:1-b. We agree with this analysis.

In arguing for a contrary result, the City contends that RSA 165:1-b does not apply to this case because the Guidelines govern eligibility determinations, while RSA 165:1-b governs only suspensions. The plain meaning of RSA 165:1-b does not support this construction.

■ RSA 165:1-b, on its face, governs both eligibility determinations and suspensions. RSA 165:1-b, II provides: "No person shall be found ineligible for assistance or suspended from assistance pursuant to paragraph I" until he or she has been given written notice and a seven-day period in which to comply. RSA 165:1-b, III similarly provides that if the person does not comply within seven days, the municipality "may issue . . . a written notice that the person is ineligible for assistance or suspended from assistance." RSA 165:1-b, V specifically refers to "[t]he period of ineligibility or suspension." Contrary to the City's assertions, RSA 165:1-b does not distinguish between periods of ineligibility and suspension.

The City also argues that RSA 165:1-b does not apply to the plaintiffs because they were not "otherwise eligible for assistance." RSA 165:1-b, I. The City reasons that the plaintiffs were not "otherwise eligible for assistance" because they misrepresented information related to their financial resources in violation of the Guidelines. Thus, the City contends, RSA 165:1-b, which applies only to those who are "otherwise eligible for assistance," does not apply to the plaintiffs.

■ The City's narrow focus upon the phrase "otherwise eligible for assistance" is misplaced. RSA 165:1-b, I, specifically applies when a person who is "otherwise eligible for assistance . . . *become[s] ineligible*" for such assistance because of willful failure to comply with certain written guidelines. (Emphasis added.) Here, the plaintiffs were "otherwise eligible for assistance" until the City deemed them ineligible for further receipt of that assistance because they misrepresented or omitted information about their financial resources. Accordingly, RSA 165:1-b applies.

The City's reliance upon RSA 165:1, II(b) (2002) is also misplaced. RSA 165:1, II(b) requires a municipality to adopt guidelines regarding the "criteria for determining eligibility." The City contends that the Guidelines merely set forth "criteria for determining eligibility," and, therefore, were consistent with RSA 165:1, II(b). The Guidelines, as applied to the plaintiffs and others similarly situated, do not support this construction.

■ The Guidelines provide for a six-month penalty for misrepresentation or omission of information. They were applied to the plaintiffs specifically because the plaintiffs allegedly failed to disclose "income, resources, or

other material financial data." RSA 165:1-b, I(a). Accordingly, as applied in the instant case, the Guidelines, like RSA 165:1-b, I(a), provide penalties for failing to disclose financial information. However, whereas RSA 165:1-b provides that the penalty shall be seven or fourteen days, or, if the person continues not to comply, until the person does so, the Guidelines impose a blanket six-month suspension. In this way, the Guidelines, as applied to the plaintiffs, actually conflict with RSA 165:1-b, and are impliedly preempted by it. *See N. Country Envtl. Servs.*, 150 N.H. at 611.

The City also argues that the Guidelines are consistent with RSA chapter 167, which concerns State assistance to the blind, aged, or disabled persons, and to dependent children. This is immaterial as State assistance is not at issue. RSA chapter 167 does not apply to this case.

Because we hold that RSA 165:1-b and the Guidelines actually conflict, it is also immaterial that, according to the City, the Guidelines are consistent with the humanitarian purpose of RSA chapter 165. Whether the Guidelines conflict with the purpose of RSA chapter 165 would be relevant only if the terms of the Guidelines and RSA 165:1-b did *not* conflict. *See id.* We have reviewed the City's remaining arguments and conclude that they do not warrant extended consideration. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

For these reasons, we reverse the trial court's grant of summary judgment in favor of the City and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

HICKS, CONBOY and LYNN, JJ., concurred.