NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Grafton
No. 2015-0264

JEREMY OLSON & a.

v.

TOWN OF GRAFTON

Argued: January 7, 2016
Opinion Issued: February 12, 2016

B.D. Ross Law Office, of Manchester (Brandon D. Ross on the brief and orally), for plaintiff Jeremy Olson.

Plaintiffs Thomas Ploszaj, Christopher Kairnes, and Howard Boucher filed no brief.

Mitchell Municipal Group, P.A., of Laconia (Steven M. Whitley on the brief, and Laura Spector-Morgan orally), for the defendant.

BASSETT, J. Plaintiff Jeremy Olson appeals an order of the Superior Court (MacLeod, J.) denying a petition filed by Olson and his co-plaintiffs, Thomas Ploszaj, Christopher Kairnes, and Howard Boucher, for declaratory and injunctive relief against the defendant, the Town of Grafton (Town). On

appeal, Olson argues that the trial court erroneously determined that it was lawful for the Town to include on the official ballot for the annual Town meeting the phrase, "*The Selectmen do not recommend this article*," below each of the plaintiffs' 20 warrant articles, which the plaintiffs had petitioned to include on the ballot. We affirm.

The relevant facts follow. On January 20, 2015, the Town's three-member selectboard reviewed and discussed the 36 warrant articles to be placed on the ballot for the annual Town meeting scheduled for March 10, including 20 articles that the plaintiffs had petitioned to include on the ballot. The plaintiffs' articles included:

17) To see if the Town will vote to instruct the Chief of Police to not prosecute any matter relating to the use or possession of cannabis (marijuana) in compliance with Article IX and Article XIII of the United States Constitution.

. . . .

24) To see if the Town will vote to preclude any Town official and the use of any Town funds to cooperate with the National Security Agency (NSA).

25) To see if the Town will vote to preclude the Town from accepting any Federal military equipment in the future and to require the immediate sale at public auction of any military equipment previously received.

. . . .

31) To see if the Town will vote to instruct State Representative[s] Steven Darrow, Robert Hull and Jeffrey Shackett to propose legislation to repeal the licensing of dogs.

32) To see if the Town will vote to preclude the Select Board (Selectmen) from placing any opinion of any Warrant Article on the Warrant, except for Warrants that appropriate funds or are otherwise required by RSA 3: VI.

At the January 20 meeting, one selectboard member moved that the ballot include the phrase "the Selectmen do not recommend this article" relative to each of the plaintiffs' warrant articles. The motion passed unanimously. On January 26, the selectboard signed the warrant for the annual Town meeting. On the official ballot, appearing below each of the plaintiffs' warrant articles, was the notation: "*The Selectmen do not recommend this article*." On February 27, in response to citizen concern

2

about the selectboard's inclusion of its recommendations on the plaintiffs' warrant articles, the selectboard met and voted unanimously to retain those recommendations on the official ballot.

On March 5, the plaintiffs filed their petition for injunctive and declaratory relief. The trial court held a final hearing on offers of proof and, on March 9, denied the petition, concluding that RSA 32:5, V-a authorizes the Town to place recommendations on any warrant article.

At the annual meeting held thereafter, the voters rejected all of the plaintiffs' warrant articles by large margins. For instance, the article asking whether the Town would preclude the selectboard from "placing any opinion of any Warrant Article on the Warrant," except for articles concerning appropriations, was defeated by a vote of 81 in favor and 292 opposed. The plaintiffs unsuccessfully moved for reconsideration of the trial court's decision, and this appeal followed.

On appeal, Olson does not seek to invalidate the votes taken at the March 2015 annual meeting. Instead, he requests that we reverse the trial court's determination that the selectboard acted lawfully and remand to the trial court with instructions to grant permanent, prospective injunctive relief and consider the plaintiffs' request for attorney's fees. Although any issues the plaintiffs raised in the trial court with regard to the March 2015 annual meeting are now moot, Olson's appeal is not moot because it presents legal issues that are of pressing public interest and are "capable of repetition yet evading review." Appeal of Hinsdale Fed. of Teachers, 133 N.H. 272, 276 (1990) (quotation omitted).

Our resolution of the issues on appeal requires that we engage in statutory interpretation. We review the trial court's statutory interpretation de novo. Petition of Malisos, 166 N.H. 726, 729 (2014). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Id. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written, and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. When the language of a statute is plain and unambiguous, we need not look beyond the statute itself for further indications of legislative intent. Id.

Olson first argues that the selectboard lacked authority under RSA 39:3 (2000) to insert its recommendations on the official ballot below each of the plaintiffs' warrant articles. RSA 39:3 provides, in pertinent part:

Upon the written application of 25 or more registered voters or 2 percent of the registered voters in town, whichever is less,

3

although in no event shall fewer than 10 registered voters be sufficient, presented to the selectmen or one of them not later than the fifth Tuesday before the day prescribed for an annual meeting, the selectmen shall insert in their warrant for such meeting the petitioned article with only such <u>minor textual changes</u> as may be required.

(Emphasis added.)  Olson contends that the selectboard's recommendations on the plaintiffs' warrant articles constituted more than "minor textual changes" to those articles and, therefore, violated RSA 39:3.  We disagree that the recommendations, which appeared in bolded, italicized text below each of the plaintiffs' warrant articles, constituted "textual changes" to the articles themselves.  We have reviewed Olson's remaining arguments regarding RSA 39:3 and conclude that they do not warrant further discussion.  See <u>Vogel v. Vogel</u>, 137 N.H. 321, 322 (1993).

Olson next asserts that the selectboard had no authority under RSA 32:5 (Supp. 2015) to insert its recommendations.  RSA chapter 32 pertains to municipal budgets.  See RSA ch. 32 (2000 & Supp. 2015).  RSA 32:5 concerns the preparation of municipal budgets and includes details regarding budget forms, certain procedural requirements, and the preparation of budget-related warrant articles.  Under RSA 32:5, V:

When any purpose of appropriation, submitted by a governing body or by petition, appears in the warrant as part of a special warrant article:

(a) The article shall contain a notation of whether or not that appropriation is recommended by the governing body, and, if there is a budget committee, a notation of whether or not it is recommended by the budget committee;

(b) If the article is amended at the first session of the meeting in an official ballot referendum municipality, the governing body and the budget committee, if one exists, may revise its recommendation on the amended version of the special warrant article and the revised recommendation shall appear on the ballot for the second session of the meeting provided, however, that the 10 percent limitation on expenditures provided for in RSA 32:18 shall be calculated based upon the initial recommendations of the budget committee;

(c) Defects or deficiencies in these notations shall not affect the legal validity of any appropriation otherwise lawfully made; and

4

(d) All appropriations made under special warrant articles shall be subject to the hearing requirements of paragraphs I and II of this section.

RSA 32:3, VI (Supp. 2015) defines a "[s]pecial warrant article" as "any article in the warrant for an annual or special meeting which proposes an appropriation by the meeting" and meets certain requirements. (Quotation omitted.)

RSA 32:5, V-a provides:

The legislative body of any town, school district, or village district may vote to require that all votes by an advisory budget committee, a town, school district, or village district budget committee, and the governing body or, in towns, school districts, or village districts without a budget committee, all votes of the governing body relative to budget items or any warrant articles shall be recorded votes and the numerical tally of any such vote shall be printed in the town, school district, or village district warrant next to the affected warrant article. Unless the legislative body has voted otherwise, if a town or school district has not voted to require such tallies to be printed in the town or school district warrant next to the affected warrant article, the governing body may do so on its own initiative.

(Emphases added.)

Olson argues that RSA 32:5, V-a is "limited to budgetary matters" and "authorizes only 'numerical tallies,' not recommendations," and, therefore, does not authorize a selectboard to include its recommendation regarding any warrant article that is unrelated to the town budget. Olson asserts: "RSA 32:5, V-a says nothing of recommendations[;] [i]t allows the reporting of numerical tallies. . . . [O]nly . . . RSA 32:5, V—explicitly restricted to budgetary matters—allows recommendations to be printed." Olson reasons that, because RSA 32:5, V-a does not refer to selectboard recommendations and because RSA 32:5, V requires recommendations only for budget-related articles, a selectboard has no statutory authority to insert its recommendations on the official ballot for warrant articles that do not pertain to the budget. Accordingly, Olson concludes that, although RSA 32:5, V-a uses the phrase "any warrant articles," that phrase does not "literally mean[ ] every possible warrant article."

The Town counters that the plain language of RSA 32:5, V-a "indicates that [the] town meeting may require the selectmen to record their votes for or against recommendation[s] as tallies on the warrant, and . . . [that] this is not limited to just budgetary items or special warrant articles, but [pertains] to 'any warrant articles.'" The Town asserts that RSA 32:5, V-a expressly authorizes a

5

selectboard "to make and insert recommendations, in the event that town meeting has not required them to do so."

We conclude that RSA 32:5, V-a is ambiguous. Although the word "any" means "one, no matter what one: EVERY," Webster's Third New International Dictionary 97 (unabridged ed. 2002), we cannot interpret this word in isolation, see Hogan v. Pat's Peak Skiing, LLC, 168 N.H. 71, 73 (2015). "[W]e do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id. (quotation omitted). Similarly, we must interpret RSA 32:5, V-a in the context of the overall statutory scheme. See Holt v. Keer, 167 N.H. 232, 239 (2015). "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Id. (quotation omitted).

Here, the purpose sought to be advanced by RSA chapter 32 is set forth in RSA 32:1 (2000), which provides, in pertinent part, that "[i]t is the legislature's . . . purpose to establish uniformity in the manner of appropriating and spending public funds in all municipal subdivisions to which this chapter applies." Given that purpose and the focus of RSA chapter 32 in general, and RSA 32:5 in particular, upon the preparation of municipal budgets, arguably, the word "any" was intended to refer to "any appropriation-related warrant articles." On the other hand, we must interpret the language of RSA 32:5, V-a as written, and may not add language to it that the legislature did not see fit to include. See Petition of Malisos, 166 N.H. at 729. Moreover, if the legislature intended RSA 32:5, V-a to apply only to budget-related warrant articles, arguably, it could have easily said so. Thus, it is unclear whether, by using the word "any" to refer to "warrant articles," the legislature intended RSA 32:5, V-a to apply to all warrant articles, including warrant articles not related to the budget. Accordingly, we examine legislative history to aid our analysis.

RSA 32:5, V-a was first enacted in 2007, and applied only to budget items and warrant articles. See Laws 2007, 305:1. As first enacted, RSA 32:5, V-a provided:

> Any town may vote to require that all votes by an advisory budget committee, a town budget committee, and the governing body or, in towns without a budget committee, all votes of the governing body relative to budget items or warrant articles shall be recorded votes and the numerical tally of any such vote shall be printed in the town warrant next to the affected warrant article.

Id. As the co-sponsor of the bill explained at a senate committee hearing, the bill that resulted in RSA 32:5, V-a, Senate Bill (SB) 58, was proposed in response to a constituent "who asked the local board of selectmen and budget committee to include the numeric vote totals on the municipal budget reports that also include a required recommendation from the same boards." Relative

to the Recommendation for the Town Budget:  Hearing on S.B. 58 Before the Sen. Comm. on Pub. & Mun. Affairs 1-2 (January 30, 2007) (statement of Sen. Joseph D. Kenney) (quotation omitted), available at http://gencourt.state.nh.us/SofS_Archives/2007/senate/SB58S.pdf.  The co-sponsor further explained:

> Many of the New Hampshire budget committees have several members on them and often do not express a numeric vote on the budget for the public to see.  This forces the public to go to the town halls to ask for the numeric vote and, in some cases, ask who voted for what. . . .  The local boards need to be forthcoming with the numeric votes for budget recommendations in order to make it easier on the public . . . .

Id. at 2 (quotation omitted).  The other co-sponsor of SB 58 reiterated, "[T]he voters that show up have to ask, 'Gee, did the selectmen all agree to that or didn't they agree to that?'  They shouldn't have to go through that stuff.  They should be able to see what the vote was. . . .  People should know how their elected officials are voting."  Id. (statement of Sen. John S. Barnes).

In 2009, RSA 32:5, V-a was amended by SB 38.  See Laws 2009, 2:1.  As amended, RSA 32:5, V-a provided:

> Any town may vote to require that all votes by an advisory budget committee, a town budget committee, and the governing body or, in towns without a budget committee, all votes of the governing body relative to budget items or any warrant articles shall be recorded votes and the numerical tally of any such vote shall be printed in the town warrant next to the affected warrant article.  If a town has not voted to require such tallies to be printed in the town warrant next to the affected warrant article, the governing body may do so on its own initiative.

Id. (emphases added).  The word "any" was added to the phrase "warrant articles" after SB 38 was sent to the House of Representatives.  See N.H.H.R. Jour. 141 (2009); see also N.H.S. Jour. 123-24 (2009).  The suggestion to add the word "any" to the phrase "warrant articles" was made by the House Committee on Municipal and County Government as a result of the following exchange:

> Rep. Patten:  This doesn't mean just budget items but other warrant articles also?  [Judy Silva, New Hampshire Municipal Association]:  This is only under RSA 32 so I would say it deals with money articles only.

7

Rep. Patten:  Possible to put in the wording 'all warrant articles?'  Silva:  You can do what you want to determine the policy.  I think other statutes need to be examined since this deals only with the tally, not the recommendation.

Rep. Patten:  Would Sen Bragdon be upset if we add this?
Bragdon:  As long as it doesn't slow the process.

Relative to Placing Vote Tallies on Town and School District Ballots:  Hearing on S.B. 38 Before the H. Comm. on Mun. & Cnty. Gov't  (February 11, 2009) (emphasis added), available at http://gencourt.state.nh.us/SofS_Archives/2009/house/SB38H.pdf.

As the exchange demonstrates, the word "any" was intended to refer to all warrant articles, not "money articles only."  Id.  When the amended bill was returned to the Senate, Senator Bragdon, a sponsor of SB 38, explained the amendment as follows:  "The House simply added the word 'any' before warrant articles, because the . . . original bill dealt with budgetary, financial warrant articles, and there are warrant articles before towns that don't have a dollar value with them, and they'd like those vote tallies as well."  N.H.S. Jour. 123 (2009).

The legislative history also demonstrates, however, that RSA 32:5, V-a concerns only the printing of "the numerical tally" of selectboard votes on the official ballot.  It does not speak to including selectboard recommendations on the ballot.  Although RSA 32:5, V mandates that the selectboard include its recommendations on the official ballot, it applies only to appropriation-related "special warrant article[s]."  Because the legislature did not amend RSA 32:5, V, when it amended RSA 32:5, V-a, the two statutes appear to be incongruent.

To interpret the two statutes as congruent, we rely upon our presumption "that the legislature would not pass an act that would lead to an absurd or illogical result," Favazza v. Braley, 160 N.H. 349, 351 (2010), and conclude that it would be illogical to empower a selectboard to include its vote tallies "in the town . . . warrant next to the affected warrant article," without also empowering it to inform the electorate of the recommendation reflected by its vote, RSA 32:5, V-a.  Accordingly, we hold that RSA 32:5, V-a empowers a selectboard to include both its vote tally and its recommendation "in the town . . . warrant next to the affected warrant article."  RSA 32:5, V-a.  Of course, if the legislature disagrees with our statutory interpretation, it is free, subject to constitutional limitations, to amend the pertinent statutes as it sees fit.  See Hogan, 168 N.H. at 75.  Because the issue is not before us, we express no opinion as to whether the selectboard in this case violated RSA 32:5, V-a by including its recommendation below each of the plaintiffs' warrant articles without also including the numerical tally of its unanimous vote.

Olson next contends that, by inserting its recommendation below each of the plaintiffs' warrant articles, the selectboard violated the plaintiffs' rights under Part I, Article 11 of the State Constitution. Part I, Article 11 provides, in pertinent part: "All elections are to be free, and every inhabitant of the state of 18 years of age and upwards shall have an equal right to vote in any election." Olson asserts that the plaintiffs' rights to a "free election" and to an "equal right to vote" were violated by the selectboard's actions. However, Olson's constitutional claims are premised expressly upon his assumption that, by inserting its recommendations, the selectboard acted without, or in contravention of, statutory authority. For instance, Olson argues: "This is not a case where the Town . . . followed any law set down by the Legislature. Rather, the Town . . . decided to oppose the Plaintiffs' citizen-initiated petitions." Olson also argues: "Without authority, printing the recommendations of local government officials directly on the ballot—between the question and the circle to fill in—is mere inches away from having the Town pre-fill the ballots with the votes it desires." Additionally, Olson asserts: "[T]he Town . . . has no lawful authority to include recommendations on the ballots." Olson further contends: "[T]his is not a case where there is no statute to analyze—the Town['s] . . . actions are wholly without any statutory authority."

Olson does <u>not</u> argue that, even if the selectboard acted lawfully under the pertinent statutes, it nonetheless violated the plaintiffs' constitutional rights. Because Olson's constitutional claims are based upon a faulty premise, we reject them.

Any issue that Olson raised in his notice of appeal, but did not brief, is deemed waived. <u>In re Estate of King</u>, 149 N.H. 226, 230 (2003).

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.