NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2017-0153


ANTHONY W. FRANCIOSA, III f/n/f VANEESA S. FRANCIOSA

v.

HIDDEN POND FARM, INC. & a.

Argued:  March 8, 2018
Opinion Issued:  September 21, 2018


Colliander & Brown, P.A., of Portsmouth (John D. Colliander on the brief, and David S. Brown orally), for the plaintiff.


Primmer Piper Eggleston & Cramer PC, of Manchester (Gary M. Burt on the brief and orally), for the defendants.


BASSETT, J.  The plaintiff, Anthony W. Franciosa as father and next friend of Vaneesa S. Franciosa, appeals an order of the Superior Court (Anderson, J.) granting the motion for summary judgment filed by the defendants, Jessica Grace Elliott and Hidden Pond Farm, Inc. a/k/a Hidden Pond Farm, and denying the plaintiff's cross-motion for partial summary judgment.  The trial court ruled that, pursuant to RSA 508:19 (2010), the defendants were entitled to immunity from liability for the injuries Vaneesa sustained in a horseback riding accident.  We affirm.

The material facts are not in dispute.  On July 20, 2014, Vaneesa was severely injured in a horseback riding accident.  At the time of the accident,

she was thirteen years old, had been riding horses for eight years, and had been taking weekly riding lessons from Elliott, an expert equestrian, for almost two years. Approximately once each week, Vaneesa also went on a "free ride" — a ride that did not involve a lesson. On those occasions, Elliott was not always present and no one was assigned to supervise Vaneesa.

On July 19, the day before the accident, Vaneesa texted Elliott to arrange a lesson for the following day. Elliott texted Vaneesa that, although she would not be present at the farm on the 20th, Vaneesa had permission to take a free ride on Wilma, a horse that Vaneesa had ridden without incident on at least two occasions. On July 20, after riding Wilma for about 30 minutes, Vaneesa fell to the ground as she tried to dismount. She was seriously injured when Wilma then stepped on her.

Before turning to the instant lawsuit, it is useful to review the statutory scheme in New Hampshire governing the liability of any person engaged in an equine activity. See RSA 508:19, II. Notably, more than 25 states have similar statutes, see Annotation, Validity, Construction, and Application of Statutory Exemptions from Liability for Persons Injured by Equine or Equestrian Activities, 79 A.L.R.6th 487 (2012). Although courts in other jurisdictions have construed these statutes, see id., this is our first opportunity to interpret RSA 508:19. Enacted in 1998, RSA 508:19 limits the liability of persons engaged in equine activities "for an injury or the death of a participant resulting from the inherent risks of equine activities." RSA 508:19, II. The pertinent portions of the statute are as follows:

I. In this section

. . . .

(f) "Inherent risks of equine activities" means those dangers and conditions which are an integral part of equine activities, including, but not limited to:

> (1) The propensity of an equine to behave in ways that may result in injury, harm, or death to persons on or around them.

> (2) The unpredictability of an equine's reaction to such things as sound, sudden movements, and unfamiliar objects, persons, or other animals.

> (3) Certain hazards such as surface and subsurface conditions not obvious to the equine participant or not known and reasonably not known by the equine professional or sponsor.

2

(4) Collisions with other equines or objects that can be reasonably foreseen as a result of normal equine activities.

(5) The potential of a participant to act in a negligent manner that may contribute to injury of the participant or others, such as failing to maintain control over the animal or not acting within the participant's ability; except where said negligence can be reasonably foreseen and the equine professional or sponsor has failed to take any corrective measures.

II. Except as provided in paragraph III of this section, an equine activity sponsor, an equine professional, or any other person engaged in an equine activity, shall not be liable for an injury or the death of a participant resulting from the inherent risks of equine activities and, except as provided in paragraph III of this section, no participant's representative shall make any claim against, maintain an action against, or recover from any other person for injury, loss, damage, or death of a participant resulting from any of the inherent risks of equine activities. Each participant in an equine activity expressly assumes the risk of and legal responsibility for any injury, loss or damage to person or property which results from participation in an equine activity. Each participant shall have the sole responsibility for knowing the range of his or her ability to manage, care for, and control a particular equine or perform a particular equine activity, and it shall be the duty of each participant to act within the limits of the participant's own ability, to maintain reasonable control of the particular equine at all times while participating in an equine activity, to heed all posted warnings, and to refrain from acting in a manner which may cause or contribute to the injury of any person.

III. Nothing in paragraph II of this section shall prevent or limit liability of an equine activity sponsor, an equine professional, or any other person engaged in an equine activity, if the equine activity sponsor, equine professional, or person:

. . . .

(b) Provided the equine and failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity.

. . . .

3

(d) Commits an act or omission that constitutes willful or wanton disregard for the safety of the participant, and that act or omission caused the injury.

The plaintiff filed this action against the defendants seeking damages for Vaneesa's injuries. The defendants moved for summary judgment on the basis that the equine immunity provisions set forth in RSA 508:19 bar the plaintiff's negligence claim. The plaintiff filed a cross-motion for partial summary judgment, arguing that Vaneesa's injuries were not caused by an "inherent risk" of horseback riding, and, therefore, that the defendants are not immune from liability. Alternatively, the plaintiff argued that even if the statute applies, a jury trial was necessary to resolve issues of material fact regarding the statutory exceptions in RSA 508:19, III. The trial court entered summary judgment in favor of the defendants, and denied the plaintiff's cross-motion.

In its order, the trial court concluded that Vaneesa's injuries resulted from the "inherent risks of equine activities." See RSA 508:19. The trial court also concluded that, as a matter of law, Elliott's conduct did not come within any of the exceptions to immunity set forth in RSA 508:19, III. Specifically, the trial court determined that the exception set forth in RSA 508:19, III(b) did not apply because "no reasonable juror could find that Elliott failed to make reasonable and prudent efforts to assess [Vaneesa's] ability before [giving] her permission to ride Wilma." See RSA 508:19, III(b). The trial court also concluded that the exception in RSA 508:19, III(d) did not apply because the plaintiff could not establish proximate cause: in other words, the plaintiff failed to establish that Elliott's failure to supervise Vaneesa proximately caused the accident which resulted in Vaneesa's injuries. See RSA 508:19, III(d). The plaintiff filed a motion for reconsideration, which the trial court denied. This appeal followed.

When reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. JMJ Properties, LLC v. Town of Auburn, 168 N.H. 127, 129 (2015). If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment. Id. at 129-30. A fact is material if it affects the outcome of the litigation under the applicable substantive law. Bond v. Martineau, 164 N.H. 210, 213 (2012). We review the trial court's application of the law to the facts de novo. Conant v. O'Meara, 167 N.H. 644, 648 (2015).

On appeal, the plaintiff argues that the trial court erred when it granted the defendants' motion for summary judgment and found that: (1) subject to certain limitations, RSA 508:19 immunizes equine professionals from

4

negligence suits; (2) Vaneesa's injuries resulted from an inherent risk of equine activity; and (3) Elliott's conduct does not come within one of the exceptions to immunity set forth in paragraph III of RSA 508:19.

Resolution of the issues in this case requires that we engage in statutory interpretation. We review the trial court's statutory interpretation de novo. Olson v. Town of Grafton, 168 N.H. 563, 566 (2016). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. Petition of Carrier, 165 N.H. 719, 721 (2013). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. Id. This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id.

The plaintiff first argues that the trial court erred by finding that RSA 508:19 applies to her negligence claim. Focusing on the statement of intent in the session law, the plaintiff contends that RSA 508:19 does not immunize the defendants. The statement of intent provides as follows:

I. The general court finds that equine activities are important to the economy and culture of the state. The general court also recognizes that equines are prone to behave in ways that may result in injury, harm, or death to persons involved in equine activities, and so finds that the responsibilities of sponsors and professionals should be distinguished between those of the participants for purposes of determining liability for injuries suffered from those activities.

II. It is the intent of the general court that no person shall be liable for damages sustained by another solely as a result of risks inherent in equine activity, insofar as those risks are inherent to the equine activity and obvious to the person injured.

III. It is the intent of the general court that a person responsible for equines, or responsible for the safety of those engaged in equine activity, whose negligence proximately causes injury to a person engaged in those activities, is liable for that injury in accordance with other applicable law.

Laws 1998, 24:1.

5

The plaintiff asserts that paragraph III is a "clear expression of the Legislature that claims of negligent conduct by the equine professional survive," and that, because Elliott negligently "created dangers above the usual inherent risks" of equine activities when she allowed Vaneesa to ride Wilma unsupervised, the immunity statute does not apply. We disagree.

At the outset, we observe that the legislature chose not to include the statement of intent in the text of RSA 508:19, and we will not construe the statement of intent in a fashion that would negate explicit statutory language. State v. Kelley, 153 N.H. 481, 484-85 (2006) (recognizing that although the preamble reflected the legislature's articulation of the policy behind the statute, that policy did not override other statutory provisions). The statement in paragraph III, that an equine professional "whose negligence proximately causes injury to a person engaged in [equine] activities, is liable," Laws 1998, 24:1, III, must not be read in isolation. See Petition of Carrier, 165 N.H. at 721 (when interpreting statutes, we first look to the language of the statute itself and construe all parts of a statute together to "discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme"). Rather, it must be read in the context of other language set forth in the statement of intent and in the statute itself. We conclude that, when taken as a whole, the statement of intent articulates the statute's clear purpose: to shield persons involved in an equine activity from liability for negligence claims related to a participant's injuries resulting from the inherent risks of equine activity, see RSA 508:19, II, while at the same time ensuring the right of an injured participant to recover under certain narrowly defined circumstances, see RSA 508:19, III. If we were to interpret the statement of intent as broadly as the plaintiff suggests — so that virtually all negligence claims against equine professionals survive — we would eviscerate the statute and undermine its very purpose. See Wolfgram v. N.H. Dep't of Safety, 169 N.H. 32, 36 (2016) (we will not construe a statute in a way that would render it a virtual nullity).

The plaintiff also argues that construing RSA 508:19 to bar this suit would violate the principle that statutes that bar common law rights to recover for injuries are to be strictly construed. See Martin v. Pat's Peak, 158 N.H. 735, 739 (2009) (immunity provisions barring the common law right to recover are to be strictly construed); see also Soraghan v. Mt. Cranmore Ski Resort, 152 N.H. 399, 401 (2005) (if a common law right is abolished, it must be clearly expressed by the legislature). We disagree. Here, the plain language of RSA 508:19 demonstrates that the legislature intended to materially limit an injured person's right to bring negligence claims, while at the same time it intended that the claims delineated in paragraph III of the statute survive. See RSA 508:19, III. Thus, strictly construing this statute, we conclude that the legislature clearly expressed an intention to generally immunize those engaged in equine activities from negligence suits, with a few narrowly defined exceptions.

6

We next address the plaintiff's argument that the trial court erred when it concluded that Vaneesa's injuries resulted from an inherent risk of equine activity. See RSA 508:19. The statute defines the "[i]nherent risks of equine activities" as "those dangers and conditions which are an integral part of equine activities," and provides five examples. RSA 508:19, I(f).

The plaintiff argues that because Elliott was not present at the farm on the day of the accident and could not supervise Vaneesa during her ride, the trial court erred when it determined that Vaneesa's injury was caused by an inherent risk of equine activities. In essence, the plaintiff argues that because Elliott's purported negligence caused the accident, Vaneesa's injury could not have resulted from the inherent risks of horseback riding. The plaintiff focuses on the example set forth in RSA 508:19, I(f)(5), and argues that, when the equine professional is not physically present at the time of the injury, and, therefore, is not available to take contemporaneous "corrective measures," the risk of injury does not qualify as "an inherent risk of equine activity" triggering immunity.

RSA 508:19, I(f)(5) identifies the participant's negligence as an inherent risk of equine activity that triggers immunity:

> The potential of a participant to act in a negligent manner that may contribute to injury of the participant or others, such as failing to maintain control over the animal or not acting within the participant's ability; except where said negligence can be reasonably foreseen and the equine professional or sponsor has failed to take any corrective measures.

RSA 508:19, I(f)(5). Here, we do not have to decide whether Elliott's physical absence and inability to supervise Vaneesa at the time of Vaneesa's injury places the accident outside of the risks inherent in equine activities, because under RSA 508:19, I(f)(5), a failure to take "corrective measures" is relevant only when the participant is negligent and that negligence can be reasonably foreseen — which is not the case here. Even assuming that Vaneesa acted in a negligent manner that contributed to her injury, there is no evidence that her negligence could have been reasonably foreseen by Elliott. On the day of the accident, Vaneesa rode Wilma, a horse that she had previously ridden, and, although there is some evidence that Vaneesa had difficulty managing Wilma during her "free ride," the trial court observed that "[t]here is no suggestion in the record that [Vaneesa] had previously had difficulty controlling horses which had begun acting jumpy, as horses can sometimes do." We agree with the trial court, and conclude that the narrow exception in RSA 508:19, I(f)(5) is inapplicable.

The plaintiff further argues that, because Elliott failed to enforce "her own safety rule" — not to allow minors to ride without adult supervision — the

trial court erred when it concluded that Vaneesa's injury was caused by an inherent risk of equine activities. We are not persuaded. Vaneesa was injured when she fell off of, and was then stepped on by, Wilma. Specifically, the circumstances surrounding Vaneesa's accident come within the scope of inherent risks as defined in RSA 508:19, I(f)(1) and (2). RSA 508:19, I(f)(1) ("[t]he propensity of an equine to behave in ways that may result in injury, harm, or death to persons on or around them"); RSA 508:19, I(f)(2) ("[t]he unpredictability of an equine's reaction to such things as sound, sudden movements, and unfamiliar objects, persons, or other animals"). The trial court concluded, and we agree, that this accident and Vaneesa's injuries resulted from "precisely the kinds of risks that are inherent in equine activities." See RSA 508:19 I(f); Christian v. Elden, 107 N.H. 229, 235 (1966) (recognizing, in a case decided before RSA 508:19 was enacted, that "everyone who mounts a horse should realize that he [or she] may fall or get thrown off"); see also Kangas v. Perry, 620 N.W.2d 429, 433 (Wis. Ct. App. 2000) ("[t]he horses' propensity to move without warning is an inherent risk of equine activity"). Moreover, there is nothing in RSA 508:19 to suggest that an equine professional's failure to enforce a voluntarily adopted safety rule would narrow the scope of statutory immunity.

The plaintiff next argues that, even if Vaneesa's injury resulted from an inherent risk of equine activities, the plaintiff's claim "still survives as an exception to immunity under Part III (b) or (d) of the statute." We disagree.

RSA 508:19, III(b) provides that an equine professional may be held liable for an injury or death resulting from an inherent risk of equine activities if the professional "[p]rovided the equine and failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity." RSA 508:19, III(b). The plaintiff argues that this exception applies because "[a] jury could find that the 'engage safely' test is not met as it was not reasonable to assess [Vaneesa] and leave her alone simply because she was only 13, and a jury could find that it was not reasonable to use the new horse, Wilma, that [Vaneesa] had ridden only once or twice." The defendants counter that there is ample evidence in the record to establish that Elliott knew that Vaneesa was an experienced rider, and that she was able to proficiently ride horses that were unfamiliar to her. We agree with the defendants.

Elliott provided weekly lessons to Vaneesa for almost two years, and was aware of Vaneesa's substantial riding experience. During that period, Vaneesa had ridden several different horses, including Wilma, whom she had ridden at least twice in the five weeks before the accident. Also, Vaneesa testified that she accompanied Elliott to at least five horse shows, and on those occasions Vaneesa would select and ride a horse provided by the show with which she had no previous experience. Vaneesa would "walk, trot, and canter" with the horse, and she reported no difficulty controlling the horses that she selected.

8

Notably, the plaintiff does not contend that the accident was a result of Vaneesa's inability to "engage safely" with Wilma; rather, he argues that the accident occurred because Elliott was not supervising the ride. However, under exception III(b), we need only consider whether Elliott made "reasonable and prudent efforts to determine the ability of [Vaneesa] to engage safely in the equine activity." RSA 508:19, III(b). Elliott satisfied this requirement. We agree with the trial court that "no reasonable juror could find that Elliott failed to make reasonable and prudent efforts to assess [Vaneesa's] ability before providing permission to ride Wilma." Accordingly, we conclude that Elliott's conduct does not fall within exception III(b).

The plaintiff next argues that Elliott's conduct falls within exception III (d): a person engaged in an equine activity does not qualify for immunity if he or she "[c]ommits an act or omission that constitutes willful or wanton disregard for the safety of the participant, and that act or omission caused the injury." RSA 508:19, III(d). The plaintiff contends that a reasonable jury could find that Elliott's absence from the farm — and her inability to personally supervise Vaneesa on the day of the accident — combined with Elliott's failure to enforce her own safety rule, constituted a "willful or wanton disregard" for Vaneesa's safety. The defendants counter that "[t]here is simply no evidence of Elliott acting with any intent to harm or [be indifferent] to [Vaneesa's] safety in the record," and, therefore, exception III(d) does not apply. We agree with the defendants.

RSA 508:19 does not define "willful" or "wanton." When a term is not defined in the statute, we look to its common usage, using the dictionary for guidance. K.L.N. Construction Co. v. Town of Pelham, 167 N.H. 180, 185 (2014). Black's Law Dictionary states that "a voluntary act becomes willful, in law, only when it involves conscious wrong or evil purpose on the part of the actor, or at least inexcusable carelessness, whether the act is right or wrong." Black's Law Dictionary 1834 (10th ed. 2014) (defining "willful"). Black's Law Dictionary defines "wanton" as "[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences." Id. at 1815.

Our case law construing the words "willful" and "wanton" suggests that willful or wanton disregard for the participant's safety is something more than ordinary negligence. See Migdal v. Stamp, 132 N.H. 171, 175-76 (1989) (stating that while the fireman's rule precludes firemen from filing complaints of ordinary negligence against homeowners, the rule "does not extend to willful, wanton or reckless conduct"). However, our case law is sparse and does not provide much guidance beyond the dictionary definitions set forth above.

Here, there is no evidence to support the plaintiff's argument that Elliott's failure to supervise Vaneesa or to enforce her own "safety rule" amounts to willful or wanton disregard for the plaintiff's safety. There is no

9

evidence that Elliott acted with <u>willful</u> disregard of Vaneesa's safety, or, in other words, that she had a conscious purpose to disregard Vaneesa's safety.

Nor is there evidence in the record that Elliott acted with <u>wanton</u> disregard for Vaneesa's safety: that she acted with malicious or unreasonable disregard for Vaneesa's safety while being utterly indifferent to the consequences. Having instructed Vaneesa for two years, Elliott knew of Vaneesa's extensive riding experience. There is no history of dangerous incidents regardless of whether Vaneesa rode with or without supervision. There is no evidence that Elliott was aware that Wilma could present a danger to Vaneesa or any other rider. On those occasions when Wilma could be difficult to control, Elliott had instructed Vaneesa regarding how she should react. We agree with the trial court that "[t]here is nothing in the record to suggest that Elliott failed to properly train [Vaneesa]." Accordingly, we conclude that there is no evidence in the record that Elliott acted with "willful or wanton disregard" for Vaneesa's safety. Therefore, Elliott's conduct does not come within the exception to immunity stated in RSA 508:19, III(d). Having so concluded, we need not address the plaintiff's argument that the trial court erred when it ruled that no reasonable juror could conclude that Elliott's conduct proximately caused Vaneesa's injuries. <u>See</u> RSA 508:19, III(d) (states that an equine professional could still be held liable if he or she "[c]ommits an act or omission that constitutes willful or wanton disregard for the safety of the participant, <u>and</u> that act or omission caused the injury" (emphasis added)).

Finally, the plaintiff argues that the trial court "erroneously resolved factual issues unfavorably to the Plaintiff and therefore erred under summary judgment law." We disagree. The material facts are not in dispute. To the extent that the plaintiff contends that factual issues remain, the resolution of those factual disputes will not "affect[] the outcome of the litigation under the applicable substantive law." <u>Bond</u>, 164 N.H. at 213.

In sum, we conclude that the trial court did not err in ruling that the defendants were entitled to immunity under RSA 508:19. Any issue that the plaintiff raised in his notice of appeal, but did not brief, is deemed waived. <u>Halifax-American Energy Co. v. Provider Power, LLC</u>, 170 N.H. 569, 575 (2018).

<u>Affirmed</u>.

LYNN, C.J., and HANTZ MARCONI, J., concurred.